## Donelly *against* Vandenbergh.

THIS was an action of *debt*, for the penalty of 500 dollars. The cause was tried at the circuit, held in *Greene* county, before Mr. Justice *Spencer*, the 3d *December*, 1806.

The declaration stated, that by an act of the legislature, in 1803, the plaintiff, *William Tremble*, *Jacob Vanderhoff*, and four others, had granted to them, for seven years, the sole and exclusive right of erecting and running so many stage-waggons, on the west side of *Hudson* river, between the city of *Albany*, and the northern boundary line of the state of *New-Jersey*, along the most usual route established, or thereafter to be established, as they should judge sufficient, for passengers, &c. and that it should not be lawful for any other person during the said term, to erect or establish a stage on the said route, under a penalty of 500 dollars, to be recovered by any person who should prosecute for the same : That the defendant, not regarding the act, &c. did, within the term aforesaid, to wit, on the 1st *February*, 1806, at *Catskill*, erect and establish a stage on the said route, and without the consent of the plaintiff and the six other persons, or either of them, whereby, &c.

The defendant pleaded *nil debet.* Upon the trial, the plaintiff offered in evidence, the act, as published in the sta-

*By an act of the legislature, a grant was made to A and six others, named, and their executors, administrators, & assigns, of the exclusive right of establishing and running stage-waggons on the west side of Hudson's river from Albany to the north line of N. Jersey, for the term of seven years; and if any other person should establish a stage on the same route, during that term, he was made liable to the penalty of 500 dollars. The grantees, by certain resolutions, divided the whole line, and assigned a portion of the route to each grantee, who*

was to keep and own a stage on that part of the route assigned to him, and receive the profits. B, one of the grantees, with the consent of two other of the grantees, besides running a stage on the part of the route assigned to him, also run a stage on the road which had been assigned to A. In an action brought by A against B, to recover the penalty, given by the act, it was held, that the penalty was given to secure the grantees in the privilege vested in them, from the encroachment of strangers, and that the defendant being one of the grantees, was not liable for the penalty. That the resolutions assigning to each a distinct portion of the road, was not a division or partition of the franchise or right given by the act. Whether such a privilege or franchise is susceptible of partition, according to the spirit and intent of the act, so as to give exclusive and independent rights in distinct parcels of the road, *dubitatur.*

tute book, printed by the state printer. This was objected to, because it was a private act; but the objection was overruled. The act being read, was in substance as stated in the plaintiff's declaration. The plaintiff then proved, that the defendant established, and began to run, a stage-waggon between *Coxsackie* and *Athens*, in *December*, 1805, and carried passengers on the said route ; that the witness, in the employ, and under the direction of the plaintiff, run a stage through to *Coxsackie*, going empty from *Athens* to *Coxsackie*, but willing to carry passengers ; that the defendant immediately prior to his running to *Athens*, as aforesaid, had run a stage from *Albany* to *Coxsackie*, and the plaintiff exchanged passengers and the mail with the defendant, at *Coxsackie*.

The defendant then moved for a nonsuit ; 1. Because the act read, varied from that declared on, which did not set forth the month and day it was passed ; 2d. That the declaration did not set forth the second section of the act ; 3d. That it appeared, from the testimony for the plaintiff, that the defendant was an acknowledged proprietor in this line of stages, and so not subject to the penalty. The motion was overruled. The defendant then read in evidence, the second section of the act, which states, that the plaintiff, and the six other persons, shall forthwith furnish and provide four good and sufficient stage-waggons, and that the fare of each passenger shall not exceed five cents per mile, with the liberty of 14 pounds weight of baggage, &c. that such stage-waggon shall proceed once in every week, during the term, on the said line. Provided, that if the plaintiff, and the six other persons, shall neglect to perform their duties, &c. the act and their privilege granted, shall cease, &c. The reading of this section was objected to by the plaintiff, and the objection overruled. The defendant then offered to show, that the said grantees had forfeited their right, by not complying with the provisions of the second section ; but this evidence was overruled.

The defendant then offered to prove, that on the 22d or 23d *December*, 1805, two of the grantees in the act named, *licensed the defendant* to extend his route of running the stage-waggon, and carrying passengers and the mail from *Coxsackie* to *Athens*, and that this was previous to any running by the defendant, between those places ; but as it further appeared, that these two grantees still continued to own and run 48 miles of the line below *Esopus*, on their own right, and because no right was assigned by them to the defendant, nor did he run as their servant, the evidence was overruled.

The defendant next read in evidence, a *deed*, dated the 3d *April*, 1805, and executed by the plaintiff and one *Abner Miller*, by which, in consideration of 580 dollars, they bargained and sold to the defendant, one stage-waggon and four horses, &c. and also, the right, granted to the plaintiff and others, to run a line of stages, &c. and which they granted to the defendant, from his house to *Albany*, a distance of 24 miles, together with the profits, &c. on condition that the defendant should perform on his part, the rules, to be from time to time agreed on, by a majority of the proprietors of the said line, and should faithfully carry the mail from his house to *Albany*.

The defendant also offered to prove, that between the 1st *October* and the 23d *December*, 1805, the plaintiff had been frequently delinquent, and that it was a case of necessity, for the defendant to be put on the line from *Coxsackie* to *Athens*. This testimony was objected to, but admitted. The defendant further proved, that the plaintiff had a bond regulating the manner of running stages, proposed to take place the 1st *October*, 1805, and which was intended to be signed by the plaintiff, the said *Miller*, and the defendant, but it was returned without being signed ; that only one bond was sent by the plaintiff, and that was, after a meeting of the proprietors at *Goshen*, the 1st *October*, 1805, when the same was written. The defendant next read in evidence, a letter from the plaintiff

ALBANY,
Feb. 1808.

Donelly
v.
Vandenbergh.

to *Dewitt* and *Tremble*, (the latter one of the proprietors in the act) dated *June* 23d, 1805, in which he stated, that he was willing that their proposals and his should be one, as to carrying the mail.

He further proved, that between *October*, and the 23d *December*, 1805, passengers had been twice carried from *Kingston* to *Catskill*, at the expense of the plaintiff, there being no stage to carry them on ; that in the autumn of 1805, the plaintiff presented a bond to the defendant, and urged him to sign it. The bond related to a *new arrangement* for running the stage, and was written at *Goshen ;* that the plaintiff offered to run a stage if the defendant would, but the defendant refused to run under the new arrangement, and said it was too far to run from *Albany* to *Coxsackie*, according to the new plan.

The defendant also proved, that between the 1st *October* and the 1st *December*, 1805, the mail for the northward, remained at *Kingston* thirty-six hours, successively, at least once every week, and an additional mail having arrived in that period, was carried up at the same time.

The plaintiff then proved, that he had driven the mail diligently and punctually from *Coxsackie* to *Kingston*, except when delayed by the non-arrival of the defendant's stage at *Coxsackie* from *Albany*.

The resolutions at a meeting of the proprietors, at *Kingston*, in *March*, 1803, were then produced, on the part of the plaintiff, and they were, in substance, as follows :

" That a resolution of the majority should be binding upon all ; that the road be divided between the proprietors, and that *Israel Ramsen* and the plaintiff, should take the whole road from *Albany* to *Brockway's*, and that *Brockway* should take the route from his house to *Kingston ;* that each proprietor should keep a good waggon, &c. &c. and for every default, should forfeit the sum of 10 dollars, to the proprietor aggrieved ; that the stage should

run through twice a week, &c. that each proprietor should be entitled to the avails on his assigned route."

The judge charged the jury : 1st. That the plaintiff had made out his case in the first instance ; 2d. That the permission from the two proprietors did not constitute the defendant an agent or assignee, for he run the route for his own benefit ; and it was not competent for any two of the proprietors to assign a particular portion of the road, unless they had previously acquired a right to that portion, by a separation of the joint interests of the whole ; and that they could not constitute an assignee, without parting with their interest which they did not, but continued to hold it ; that, by the resolutions of *March*, 1803, they had become divested of all right to the road in question ; that the deed of the plaintiff and *Miller*, constituted the defendant an assignee of the portion of road only, mentioned in that deed ; that in cases of *necessity*, the other proprietors might license ; for all were bound to see the law executed, but such necessity was not proved here, as the delays at *Kingston* arose from the defendant's not forwarding the northern mail to *Coxsackie* in time ; he, however, left the facts to the jury, who found a verdict for the plaintiff.

A motion for a new trial, and also a motion in arrest of judgment, were made in this cause, and argued at the last *August* term.

*Van Vechten*, for the defendant. 1. This was a private act. It was made solely for the benefit of the individuals named in it. It is a mere naked privilege granted to certain persons to run stages on the public highway, for their own exclusive benefit. A public act regards the whole community, and the judges will take notice of it, *ex officio ;* but a private act, which regards particular persons or private concerns, must always be pleaded and proved as any other record.* It is discretionary in the grantees to run the stages or not; there is nothing compulsory on this head, stated in the declaration. The second section

ALBANY,
Feb. 1808.

Donelly
v.
Vandenbergh.

* 1 *Black. Com.* 86. 5 *Comyns,* 254. *Parlia. R.* 7.

of the act, to be sure, declares what the grantees are to perform, and provides, that in case of their neglect, the privilege is to be forfeited. Still it is optional with the grantees to avail themselves of the privilege or not.— Again, the privilege is confined to a particular rout, thereby converting the road so far into a private way for the benefit of the grantees ; and is to be regarded rather as a private conveyance, than a solemn act of the legislature.*

* 2 Black. Com.
346.

2. The penalty given by the act was for the purpose of protecting the privileges of the grantees from any invasion or infringement by strangers ; it has no binding force as between the parties themselves ; for they cannot sue each other for this penalty. In two instances, the defendant acted by the license and permission of two of the proprietors ; and in another, he became interested in the road, and was equally entitled to protection against strangers. There is nothing in the act to prohibit the grantees from licensing others to use the road, by running stages. Where a person acts under a license, he ceases to be a stranger. By the permission granted by *Tremble & Vanderhoff*, the defendant came into their place, and if they would not have been liable to the other proprietors for the penalty, neither can the defendant be made answerable. Again, the penalty is given for a violation of the rights of the grantees, under the act, as tenants in common. The rights of one tenant in common are as much violated by the defendant, as those of another : but the license given to the defendant by *Tremble & Vanderhoff*, is an effectual protection to him. If the plaintiff has been injured by their acts, he must seek his recompense from them. Besides, by the deed of 1805, the defendant was made a party in interest, and being a co-tenant with the other proprietors, he cannot be liable to them for a penalty intended to operate only against strangers. It will be said, perhaps, that the road was divided into distinct portions among the several proprietors, and that *Tremble & Vanderhoff*, after this division, had no authority to license the defendant to run a stage on a portion of the road assigned to another

proprietor. But the subject is not susceptible of partition. It is a grant of the entire route, and the act intends a joint and entire performance, for the *proviso* of the act operates against all the parties, in case of a failure on any part of the road.

ALBANY,
Feb. 1808.

Donelly
v.
Vandenbergh.

Again, there is nothing in the act to prohibit either of the grantees from establishing a new stage within the limits of the route. If either of the grantees can do this, and not be liable to the penalty, the defendant, as assignee of such grantee, must be equally protected.

3. This being a private act, the whole of it ought to have been set forth in the declaration; and if the act produced varies from that stated in the declaration, such variance will be fatal.* Now the second section of the act is wholly omitted in the declaration.

Next as to the grounds of the motion in arrest of judgment. 1. This being a private act, the date of it ought to have been set forth in the declaration.† 2. It ought to have been averred, that the defendant was not an executor, administrator or assignee of the grantees named in the act. The exceptions in an act creating a penalty, ought always to be negatived ;‡ and *non constat*, but that the defendant was an executor or administrator of one of the grantees. 3. The particular acts which are supposed to have amounted to erecting or establishing a stage, in violation of the privilege of the grantees, within the meaning of the act, ought to have been alleged. In an action founded on a statute, the plaintiff ought to aver every fact, which may be necessary to inform the court whether the case is within the statute.§ 4. The part of the route on which the stage was set up by the defendant, ought to have been particularly described and set forth, for the sake of certainty. 5. It ought to have been averred, that the road on which the stage was erected by the defendant, was within the route designated by the act. 6. The whole act is not set forth in the declaration, but only the first section.

* *Freeman*, 75.
*Lord Byron's* case, 19 *Viner*, 502. § 5.

† 1 *Comyns*, 330. *Action on Statute.* (I.)

‡ 1 *Term*, 141. 6 *Term*, 559. 1 *Lord Raym.* 120.

§ 5 *Comyns*, 369. 354, *Pleader*, (*C.* 76.) (*C.* 49.) *Doct. placit.* 332. 2 *East*, 340. 3 *Term*, 636. 7 *Went. Pleadings*, 120. 132. 208. 238, 239. 242. 292. 296. *as to precedents.*

ALBANY,
Feb. 1808.

Donelly
v.
Vandenbergh.

1 Caines' Ca-
ses in Error, 86.

*Grosvenor* and *E. Williams,* contra. 1. This may be said to be a public act, inasmuch as it concerns the public convenience, and by its operation, takes away the rights of individuals. In the case of *Jenkins* v. *The Union Turnpike Company,** an act incorporating a turnpike company was considered as a public act, since all the citizens were interested in highways, which contributed to their convenience. But if this be not strictly a public act, it is so much so, that the printed statute-book may be given in evidence. *Buller* lays it down, that where a private act of parliament concerns a whole county, as the act of *Bedford Levels,* for rebuilding *Tiverton,* &c. it may be given

† *Buller, N. P.* 226. *Gilb. Law of Ev.* 12, 13. *Peake's Ev.* 2d ed. 26, 27. 12 *Mod.* 216. See 5 *Term,* 436.

in evidence, without comparing it with the record :† and for the additional reason, that from the notoriety of the subject, and because it is printed by the king's printer, it may be supposed to be generally known. On the same principle, printed copies of things of a public nature, as a printed proclamation for a peace, may be read without being compared with the original. The present act is printed by the state printer, and inserted in the same volume with the public laws.

2. It is not necessary, in an action on a statute, to set forth the date. The omission of the date is no fault, but

‡ 19 *Viner,* 507; 510. *Hawkins,* ch. 25. § 104. 1 *Lord Raym.* 343.

if you recite the date, and mistake, the error is fatal.‡ So the title of a statute need not be set forth. It is objected, that the *second section* of the act is omitted in the declaration. But it is not necessary to set forth the whole of an act. It is sufficient if so much is recited as concerns the matter in question ; and a party may recite such parts as are in his favour, and omit those that make against

§ 1 *Lord Raym.* 120. 1 *Comyns,* 331. (I.) *Cro. James,* 139. 1 *Plowd.* 105. *Hob.* 226.

him.§ There is no pretence of any misrecital in this case, and it is enough, if the plaintiff has set forth all that is material for him.

3. The act was not personal as to the grantees named. It intended to protect all parties who had the right, against those who had no right. It extended to the *grantees,* and to their *executors, administrators* and *assigns.* Previous to the license granted by *Tremble & Vanderhoff,* to

the defendant, a partition of the road had been made among all the proprietors. By this act of partition, *Tremble & Vanderhoff* parted with all their right to such parts of the route as were assigned to the other proprietors, and had no authority to give the defendant permission to establish a stage on a part of the road that did not belong to them. If all the grantees could assign their entire privilege to a stranger, then they might also assign to each other; and after an assignment of their right, they must be considered as strangers. If the grantees are not allowed to divide the road between them, then each might run a line of stages through the whole route. Again, if the privilege or right was incapable of partition, as it respected the subject-matter, then a license by two of the proprietors, could not affect the rights of the rest, and the defendant acted without a competent authority. At most, the plaintiff could assign no more than an undivided seventh part, which would not justify the defendant, in running a stage from *Coxsackie* to *Athens*.

As to the motion in arrest of judgment. If the act in question be a public act, it is not necessary to set forth more than is material to the plaintiff; and if it be considered as a private act, the court must take it to be as it is pleaded, unless the party takes advantage of the omission or misrecital, by pleading *nul tiel record*, for he cannot take advantage of it by demurrer, or in arrest of judgment.* Again, where the misrecital or omission is immaterial, it is cured by the verdict.† 2. The declaration alleges, that the defendant, without the leave of the plaintiff and the other proprietors, or either of them, their or either of their executors, administrators or assigns, did erect and establish a stage, &c. which is substantially an averment that the defendant was not executor, administrator or assignee. 3. The words in the declaration are, that the defendant did erect and establish a stage, contrary to the form of the statute, and must, in the common understanding of mankind, be intended to mean, that he run a stage

ALBANY, Feb. 1808.

Donelly
v.
Vandenbergh.

* 1 *Lord Raym.* 381. 2 *Mod.* 241.
† 19 *Viner,* 509. § 14. 2 *Mod.* 241.

with passengers, and this is sufficient, without any further allegation of particular acts. 4. The route is designated in the very words of the act. Route has not precisely the same meaning as road. The route marks the *termini* or limits, within which there may be different roads. 5. An averment, in the very words of the act, is sufficient ; but these defects are cured by the verdict, which aids a title defectively set forth, though not a defective title.*

* 1 *Johnson*, 470. 2 *Wilson*, 255. *Cowper*, 826. *Doug.* 683.

*Van Vechten*, in reply. Many private charters may be for public convenience ; but public utility or convenience, connected with private interest, does not make an act a public act. If the privilege granted by the act is susceptible of partition, such a division must establish permanent and independent rights in the several proprietors. But the penalty or forfeiture attaches to the whole route or privilege, in case of a failure in any part. It might be necessary for one of the parties to run a stage on that part of the road assigned to another, in order to prevent a forfeiture of the whole. This shows that there could be no partition of the common privilege. The parties, by their agreement, subject each other to the penalty of ten dollars, in case of failure in the respective portions of the road assigned to each. But if, by this agreement, they acquired distinct and independent rights, there was no reason for this penalty ; and if, by the failure in any part, the whole became forfeited, the penalty was wholly inadequate and disproportionate. This agreement was, in fact, merely an *arrangement* among the grantees, for their own convenience. Again, if there was a division of the route, why did the proprietors stipulate to meet and adjust their accounts ?

The act grants to the persons named, the privilege of running stages on the most *usual* route, &c. Route means road ; and it may be, that the road on which the defendant run his stage, was not the most usual route.

THOMPSON, J. On the argument of this case, several questions were presented to the consideration of the court, both on the motion in arrest of judgment, and for a new

trial.  The conclusion, however, to which I have arrived, on examination of these questions, renders it unnecessary for me to consider them all.  I shall confine myself to that which goes wholly to exonerate the defendant from the penalty for which he is prosecuted.  It is stated, that the defendant offered to prove that he was licensed, by two of the grantees named in the act, to run his stage on the route complained of by the plaintiff.  The testimony was rejected, but we must consider it as given, for the purpose of determining its effect on the question before us.  This penalty was given by the act to secure the grantees in the privilege thereby vested in them, against any encroachment by strangers, and not as a security against the acts of each other.    As long as they remain tenants in common, they must be subject to the same rules, and like remedies, as other tenants in common.  The statute vested a joint interest in them.   There is no limitation as to the number of stages to be run, and if each of the grantees had undertaken to run a line, the whole extent of the road, the penalty would not have been incurred.

It is said, however, that previous to the license under which the defendant acted, the proprietors had divided the road, among themselves, by which division, those who undertook to license the defendant, had parted with their interest in that portion of the road, for which they gave the license.  I should much doubt, whether the privilege or franchise granted by this act is, according to the spirit and intention of the act, susceptible of partition, so as to give exclusive and independent rights, in distinct parcels of the road,  Public accommodation and convenience were the objects the legislature had in view, and a common interest to each proprietor in the whole extent of the road, would seem necessary, to prevent confusion with respect to the continuation of the line of stages.  If the franchise may be so divided as to vest separate rights, in distinct parts, what would be the consequence of a neglect by any one to perform the duties enjoined by the act ?  Would his portion of the road only be forfeited, or the whole extent ?  I

apprehend the latter; and this would subject the other individuals to a forfeiture, without a default. Without determining this franchise to be incapable of division, I do not think the evidence in the case will warrant the conclusion, that any such division has been made. The resolutions of the 14th *March*, 1803, adopted by the proprietors, were relied on, to show such partition. These resolutions must all be taken together, in order to determine their object and effect; and from a general view of them, I consider that nothing more could be intended than to assign to each proprietor the duty to be performed by him, and the proportion of the profits he was to receive; the proprietors retaining in themselves, collectively, a general superintendance and management of the whole route. Upon this construction, they are all reconcileable; but some of them are totally inconsistent with the idea of a separate and independent interest. The first resolution assigns to each individual, the distance he was to run. The second provides for the furnishing of able horses and suitable carriages. The third, designates the time and manner of running. The fourth provides for any future meeting of the proprietors, and declares, that any acts done by them, or a majority of them, shall be binding on the whole. And the last declares, that each one shall have the profits of the part assigned to him. If, by the first resolution, a separate, independent, and permanent interest is vested in the several proprietors, the fourth is absolutely repugnant to it, by authorising a majority of them to divest it whenever they please. Upon this construction also, the last resolution would be useless and absurd; for if the road was absolutely divided, it would follow, as matter of course, that each one would have the profits only of the part assigned to him. I conclude, therefore, that those resolutions were intended only as a designation of the duty to be performed by each proprietor, and the proportion of the profits he was to receive, subject to any other modification, which a majority of them should, at any future time, think proper to make. If a permanent

division of this interest was intended, it is a little extraordinary, that releases were not executed. The mode here adopted, for tenants in common to sever their interest is unprecedented. If my construction of these resolutions be correct, *Vanderhoff* and *Tremble* had not so far divested themselves of all interest in the part of the road now in question, as to subject themselves to the penalty of the act, had they done what the defendant has. The remedy, if any, must have been upon this agreement, for the amount of the profits. The defendant, having acted by their license and permission, cannot be considered as having incurred the penalty. This result would lead to rendering judgment for the defendant, was it authorised by the terms of the case ; as it is, a new trial must be awarded.

KENT, Ch. J. declared himself to be of the same opinion.

SPENCER, J. The defendant has moved for a new trial, and in arrest of judgment in this case, and a variety of points have been made, which I shall examine in their order.

1. That the statute, on which this action is founded, is a private act, and was not well proved, though read from the statute-book, printed by the printer of the state.* This act, so far as it respects the right granted exclusively to *Donelly* and others, to run stage-waggons from the city of *Albany* to the northern boundary of *New-Jersey*, was of a private nature ; but as it regarded the public, in providing means to subserve their interest and convenience, and, as it went to take from all, under a heavy penalty, a right, before enjoyed by all, to erect or establish any stage on that route, during the term for which the exclusive right was granted, it was, in its nature, public. The objection to receive the printed book, coming forth under the sanction of the state printer, to prove the contents of this statute, is one of a technical kind, for no man can hesitate to yield full faith to the verity of the acts thus published. It is, in general, true, that a private statute must be proved, as other records ; there are, however, exceptions to the

* 26 *Session,* c.
20.

ALBANY,
Feb. 1808.

Donelly
v.
Vandenbergh.

* 1 *Loft's Gilb.
Ev.* 13.

† 12 *Mod.* 216.

‡ 5 *Term,* 436.
*Bull. N. P.* 225,
226.

rule. Lord Ch. J. *Parker,*\* allowed the printed statute book to be evidence of the truth of a private act, touching the institution of a college, on account of the notoriety of the establishment; and Lord *Holt* recognizes the authority of those decisions, which admitted in evidence a private act of parliament concerning a whole county, such as the act of *Bedford Levels*, if printed by the king's printer; so, also, the printed proclamation of the king, and the articles of war, printed by the king's printer, have been, on great deliberation, held to be good evidence.‡ And they have been admitted as gaining some authority, from being printed by the king's printer, and from the notoriety of the subject in the vicinage. Upon these principles collectively, I think the statute-book, printed by the printer to the state, was properly read in evidence, to prove the truth of the act, on which this suit was brought.

2d. It is objected, that the defendant, being a grantee of another and definite part of the general route, is, therefore, not responsible for erecting and running a stage on that part for which he is sued.

This act, like others, and like the contracts of individuals, must have a reasonable construction, so as to effectuate, not defeat the intention of parties. The inhibition to establish a stage on the route, must be intended as an inhibition to establish one on any part of the route, otherwise the act grants nothing. From the nature of the thing, the right granted by the legislature to *Donelly* and the six others, is partible; and it appears, that it was partitioned among the grantees. The act contemplated the interest conveyed, as capable of being so assigned, and I know of no principle which forbids it. Not only lands and other things which pass by livery, but things, also, that lie in grant, as rents, commons, advowsons, &c. that cannot pass by grant without deed, whether they be in one county or several, may be parted and divided by parol without deed.§ If so, then the assignment to the defendant of a precise portion of the route, can give him no more right than a total stranger, to erect stages on a different part.

§ 16 *Vin.* 217.
*part* (A.) *Co.*
*Litt.* 169, *Salk.*
42.

ALBANY,
Feb. 1808.

Donelly
v.
Vandenbergh.

The third objection is already anticipated, and though the original grantees were tenants in common, their subsequent partition divested them, respectively, of any interest beyond such parts of the route as were assigned to them ; their license, therefore, to the defendant to erect stages on a part of the route appertaining to another, by their own agreement, was an attempt to impart a right which they did not possess, and, as such, the act is a nullity.

In arrest of judgment, it has been urged, 1st. that the day and month when the statute passed, should have been stated.

The misrecital of a public act, with a conclusion *contra formam statuti*, appears, by the authorities, to be fatal ; in the present case, there is no question, in relation to variance, and the omission to state the day and month is not material. A reference to the cases cited on the argument shows, that this is the better method of referring to a statute. 2d. That the declaration does not negative the exceptions in the first enacting clause of the act. The right to erect and run stages, is given to *Donelly* and six others, their executors, administrators and assigns ; and the penalty is given against every other person or persons, who shall erect or establish a stage or stages on the route. The objection is, that it is not alleged, that the defendant is not an assignee, executor or administrator. It is, undoubtedly, a rule of law, that an exception contained in an enacting clause, must be negatived by the plaintiff, in his declaration.* In the present case, after alleging, that the defendant erected and established a stage on the route, the declaration charged it to have been done without the consent or approbation of the grantees in the act named, or either of them, or of their or either of their executors, administrators, or assigns, legally had or obtained, contrary to the form of the statute, &c. This, I think, a full allegation, that the defendant is not an assignee, executor, administrator, and that he derived no right under the grantees, or either of them. In an action on a penal sta-

* 1 *Term*, 144.
6 *Mod.* 559.
7 *Mod.* 27.

ALBANY,
Feb. 1808.

* 1 *Term*, 141.

† *Bluet* v. *Nees*,
*Com. Rep.* 225.

‡ *Cowp.* 825.
*Avery* v. *Hoole*.

§ 4 *Burr.* 2018.

tute, it is not necessary to negative, specifically, the excep‑ tions ; it may be done generally, as in the cases mentioned‑ by Justice *Buller*, in *Spieres* v. *Parker.** In actions for pen‑ alties on the game laws, it is generally alleged, that the defendant was not qualified according to the laws then in being.   The third objection is, that the particular manner of erecting and establishing a stage on the route ought to have been stated.   This objection comes after verdict, and if the offence is stated to a common intent it is sufficient.† It was matter of evidence what did or did not constitute an erecting or establishing a stage on the routes.    A verdict will not mend the matter, where the *gist* of the action is not laid in the declaration ;‡ but it will cure ambiguity.   A verdict will supply, whatever of necessity must be given in evidence.§   The same answer applies to the fifth objection, that the particular route is not set forth ; it must be presumed, after verdict, that the route on which the defendant established his stage, was the route to which the grantees had an exclusive right.   I think on none of the grounds, urged by the counsel for the defendant, can there be a new trial, nor ought the judg‑ ment to be arrested.

VAN NESS, J. having formerly been counsel in the cause, gave no opinion.

New trial granted.